IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE HISTORICAL LOCATION INFORMATION OF THE CELLULAR DEVICE ASSIGNED CALL NUMBER 703-508-6691 | Case No. __23-mj-922-MJM__<br><br>**Filed Under Seal** |
| IN THE MATTER OF THE SEARCH OF THE CELLULAR DEVICE ASSIGNED CALL NUMBER 703-508-6691 | Case No. __23-mj-923-MJM__<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### APPLICATIONS FOR A TRACKING WARRANT AND SEARCH WARRANTS

I, Laura Steinbach, FBI Special Agent, being duly sworn, depose and state as follows:

### INTRODUCTION

1. I submit this affidavit in support of applications for three warrants. The first warrant, requested under 18 U.S.C. §§ 2703(c)(1)(A), would authorize the collection of historical cell-site location information from the cellular telephone assigned call number 703-508-6691, hereinafter "**TARGET TELEPHONE**." The warrant would command Verizon, a wireless telephone service provider headquartered at 180 Washington Valley, Road, Bedminster, NJ, to produce historical location information regarding the **TARGET TELEPHONE.** The **TARGET TELEPHONE** is further described in Attachment A, and the information to be seized is further described in Attachment B (hereinafter also referred to as the "Historical Location Warrant"). Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. The second warrant, made pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A), would authorize a search warrant for information about the location of the **TARGET TELEPHONE**. The warrant would command Verizon, to produce location

1

information in real time regarding **TARGET TELEPHONE**. The **TARGET TELEPHONE** is further described in **Attachment A** and the information to be seized is further described in **Attachments C** (hereinafter also referred to as the "Prospective Location Warrant").

3. Based on the evidence gathered to date, there is probable cause to believe that the **TARGET TELEPHONE** is being actively utilized by the subject of this investigation and that the location information of **TARGET TELEPHONE** will allow law enforcement to apprehend the subject of this investigation, who is currently a fugitive from justice. Specifically, based on the facts set forth in this affidavit, there is probable cause to believe that **Roy C. McGrath** (**McGrath**) has committed violations of federal law, including violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 666 (theft concerning federal funds), and 18 U.S.C. § 1519 (obstruction), and 18 U.S.C. § 3146 (failure to appear). After being released on violation of conditions of pretrial release, **McGrath** failed to appear for Court in Maryland as directed on March 13, 2023, and is the subject of an arrest warrant issued that same date. As such, there is also probable cause to believe that **McGrath** is aware of the criminal charges and has fled. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting **McGrath**, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

4. I submit this affidavit for the limited purpose of securing the requested warrant. I have not included details of every aspect of this investigation to date. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for issuance of the warrant. I have not, however, intentionally omitted information that would tend to defeat a determination of probable cause. The information contained in this affidavit is based upon my personal knowledge, a review of documents and other evidence, and conversations with other law enforcement officers

and other individuals. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated.

### AFFIANT BACKGROUND

5. I am a Special Agent with the Federal Bureau of Investigation (FBI). I am employed as a Special Agent of the Federal Bureau of Investigation (FBI) and have been employed since on or about August 24, 2014. I am an "investigative or law enforcement officer" of the United States, within the meaning of Section 2510(7) of Title 18, United States Code. That is, I am an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. Prior to becoming a Special Agent, I was employed with the FBI as an Intelligence Analyst.

6. I have attended the training course for Special Agents at Quantico, Virginia. I am currently assigned to the Baltimore Field Office where I investigate complex financial crime. I have been trained in the requirements for probable cause. I also have training and experience in the enforcement of laws of the United States, including training in the preparation and execution of search warrants. Over the course of several investigations, I have consulted with cyber professionals in the law enforcement field regarding the evidentiary value of computers, storage devices, email, and cell phones in conjunction with financial and criminal investigations.

7. I submit that there is probable cause to believe that there exists on the **TARGET TELEPHONE** evidence of the location of **McGrath**, who is currently a fugitive from justice for failure to appear before the United States District Court for the District of Maryland.

**PROBABLE CAUSE**

8.      McGrath was indicted on October 5, 2021. On October 22, 2022, McGrath had his initial appearance before Magistrate Judge Thomas DiGirolamo, and released on conditions. One condition was that McGrath appear "in court as required."

9.      On March 13, 2023, trial was scheduled to begin in *United States v. McGrath*, DLB-21-399, in the District of Maryland at 9:30AM before U.S. District Court Judge Deborah L. Boardman.  McGrath failed to appear for court, and Judge Boardman issued a warrant for his arrest.

10.     McGrath's attorney stated that McGrath was supposed to fly to Maryland on March 12, 2023, the night before trial. However, McGrath did not have a reservation and investigators believe he did not board any flight.  McGrath was last seen the morning of March 13, 2023 by his wife in Florida.

11.     Investigators have determined that McGrath uses the phone number 703-508-6691 (the **TARGET TELEPHONE**).  Cellular phone records indicate this number is associated with McGrath, and multiple sources in the course of the investigation have confirmed that the number is used by McGrath.

12.     Based on my training, experience, and participation in these types of investigations, I know that criminals and fugitives will often frequently change telephone numbers to evade law enforcement. Although it appears as if **McGrath** may currently use the **TARGET TELEPHONE**, law enforcement may have limited time to ascertain the location of the **TARGET TELEPHONE** as **McGrath** is currently aware that law enforcement is attempting to locate and arrest him. Accordingly, based on my training and experience, the collection of historical cell-site information

4

through the Historical Location Warrant may prove critical in locating **McGrath** through his last know locations if **McGrath** stops utilizing the **TARGET TELEPHONE.**

<b><u>AVAILABILITY OF CELL PHONE LOCATION INFORMATION</u></b>

13. The recipient of the Prospective Information Warrants, Verizon, is company that provides cellular telephone service to the general public, and is therefore a provider of "electronic Verizon, which services the **TARGET TELEPHONE**, has the technical means promptly to generate and record latitude and longitude data, to include Global Positioning System (GPS), Round Trip Time Location Information (RTT), and Precision Location Information (PLI), with respect to a specified wireless telephone by measuring its position relative to other known reference points. The information provided can be used to verify the vicinity of the **TARGET TELEPHONE**. It will not provide the **TARGET TELEPHONE's** exact pin-point location. For example, the information provided by Verizon will not indicate where the user is precisely located within a particular residence, but instead may provide the general area where the user is located and is an approximate range which can be as low as a few meters, and up to thousands of meters of the user.

14. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the

communication.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.   I also know that wireless providers typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use the information for various business-related purposes.

15. Based on my training and experience, I also know that wireless providers typically collect and retain information about their subscribers in their normal course of business.  The information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.

16. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular

telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

17. Based on my training and experience, I know that the provider can collect E-911 Phase II data about the location of the **TARGET TELEPHONE**, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on the provider's network or with such other reference points as may be reasonably available.

## AUTHORIZATION REQUEST

18. Based on the foregoing, I request that the Court issue the proposed warrants, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). I further request that the Court direct Verizon to disclose to the government any information described in Attachment B, and C that is within the possession, custody, or control of Verizon. I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B and C unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on Verizon's networks or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

19. I further request that the Court authorize execution of both the Prospective Information Warrant and the Investigative Device Warrant at any time of day or night, owing to the potential need to locate the **TARGET TELEPHONE** outside of daytime hours. In particular, allowing execution of the warrants in the nighttime (when **McGrath** is likely to be immobile) will allow officers/investigators to ascertain his location with greater precision.

20. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrants to delay notice until 30 days after the collection authorized by the warrant has been completed or **McGrath** has been arrested, whichever is sooner. The delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **TARGET TELEPHONE** could jeopardize the investigation giving **McGrath** an opportunity to change patterns of behavior of further evade arrest.

*Laura L. Steinbach*
Special Agent Laura Steinbach
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this 13th day of March, 2023.

_____
HONORABLE MATTHEW J. MADDOX
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Property to Be Searched

Records and location information associated with the cellular telephone assigned call 703-508-6691, and any other phone number currently subscribed to **Roy McGrath**, that is stored at premises controlled by Verizon, headquartered at 180 Washington Valley Road, Bedminster, New Jersey, 07921.

## ATTACHMENT B
### (Historical Location Information)

**Particular Things to be Seized**

I.  **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period from **March 6, 2023 to the Present**:

a. The following information about the customers or subscribers of the Account:

  i. Names (including subscriber names, user names, and screen names);

  ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii. Local and long distance telephone connection records;

  iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v. Length of service (including start date) and types of service utilized;

  vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

  vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell towers and sectors through which the communications were sent and received.

      iii. any and all mobile locator tools including, but not necessarily limited to, Range to Tower (RTT), Per Call Measurement Data (PCMD), Network Event Location Services (NELOS), and TrueCall/TDOA/Timing Advance Information.

II. **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 666 (theft of government funds); 18 U.S.C. § 1519 (obstruction of justice) and 18 U.S.C. § 3146 (failure to appear) involving Roy C. McGrath during the period March 6, 2023 to the Present.

23-mj-923-MJM

**ATTACHMENT C**
**(Prospective Location Information)**

**Particular Things to be Seized**

I.     **Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A-1.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II.	**Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 666 (theft of government property), 18 U.S.C. § 1519 (obstruction of justice), and 18 U.S.C. § 3146 (failure to appear) involving Roy McGrath.